# SUPREME COURT OF THE UNITED STATES

## MARIO DION WOODWARD *v.* ALABAMA

ON PETITION FOR WRIT OF CERTIORARI TO THE COURT
OF CRIMINAL APPEALS OF ALABAMA

No. 13–5380　Decided November 18, 2013

The petition for a writ of certiorari is denied.

JUSTICE SOTOMAYOR, with whom JUSTICE BREYER joins as to Parts I and II, dissenting from denial of certiorari.

The jury that convicted Mario Dion Woodward of capital murder voted 8 to 4 against imposing the death penalty. But the trial judge overrode the jury's decision and sentenced Woodward to death after hearing new evidence and finding, contrary to the jury's prior determination of the same question, that the aggravating circumstances outweighed the mitigating circumstances. The judge was statutorily entitled to do this under Alabama law, which provides that a jury's decision as to whether a defendant should be executed is merely an "advisory verdict" that the trial judge may override if she disagrees with the jury's conclusion. In the last decade, Alabama has been the only State in which judges have imposed the death penalty in the face of contrary jury verdicts. Since Alabama adopted its current statute, its judges have imposed death sentences on 95 defendants contrary to a jury's verdict.[1] Forty-three of these defendants remain on death row today. Because I harbor deep concerns about whether this practice offends the Sixth and Eighth Amendments, I would grant Woodward's petition for certiorari so that the Court

---

[1] A list of these 95 defendants sentenced to death after a jury verdict of life imprisonment is produced in an appendix to this opinion. By contrast, where juries have voted to impose the death penalty, Alabama judges have overridden that verdict in favor of a life sentence only nine times.

could give this issue the close attention that it deserves.

# I

## A

In Alabama, a defendant convicted of capital murder is entitled to an evidentiary sentencing hearing before a jury. Ala. Code §§13A–5–45, 13A–5–46 (2005). At that hearing, the State must prove beyond a reasonable doubt the existence of at least one aggravating circumstance; otherwise, the defendant cannot be sentenced to death and instead receives a sentence of life imprisonment without parole. §13A–5–45(e),(f). The defendant may present mitigating circumstances, which the State may seek to disprove by a preponderance of the evidence. §13A–5–45(g). If it has found at least one aggravating circumstance, the jury then weighs the aggravating and mitigating evidence and renders its advisory verdict. If it finds that the aggravating circumstances do not outweigh the mitigating circumstances, the jury must return a life-without-parole verdict; if it finds that the aggravating circumstances do outweigh the mitigating circumstances, it must return a death verdict. §13A–5–46(e). A life-without-parole verdict requires a vote of a majority of the jurors, while a death verdict requires a vote of at least 10 jurors. §13A–5–46(f).

After the jury returns its advisory verdict, the trial judge makes her own determination whether the aggravating circumstances outweigh the mitigating circumstances and imposes a sentence accordingly. §13A–5–47. Alabama's statute provides that "[w]hile the jury's recommendation concerning [the] sentence shall be given consideration, it is not binding upon the court." §13A–5–47(e).

## B

Woodward was convicted of capital murder for fatally

shooting Keith Houts, a city of Montgomery police officer. By a vote of 8 to 4, the jury determined that the aggravating circumstances shown by the State did not outweigh the mitigating circumstances presented by the defense. It therefore recommended a sentence of life imprisonment without parole.

The trial judge conducted his own sentencing proceeding. At that hearing, the State presented additional evidence concerning the mitigating circumstances presented to the jury. The trial judge, in part on the basis of the new evidence, rejected the jury's finding. Making his own determination that the aggravating circumstances outweighed the mitigating circumstances, the judge imposed the death penalty, thereby overriding the jury's prior advisory verdict of life without parole. The Alabama Court of Criminal Appeals affirmed Woodward's conviction and sentence, 2011 WL 6278294 (Aug. 24, 2012), and the Alabama Supreme Court denied certiorari.

## II

This Court has long acknowledged that death is fundamentally different in kind from any other punishment. See *Furman* v. *Georgia*, 408 U. S. 238, 286–291 (1972) (Brennan, J., concurring); *Gregg* v. *Georgia*, 428 U. S. 153, 188 (1976) (joint opinion of Stewart, Powell, and Stevens, JJ.). For that reason, we have required States to apply special procedural safeguards to "minimize the risk of wholly arbitrary and capricious action" in imposing the death penalty. *Gregg*, 428 U. S., at 189, 195 (joint opinion of Stewart, Powell, and Stevens, JJ.); see also *Ring* v. *Arizona*, 536 U. S. 584, 614 (2002) (BREYER, J., concurring in judgment) (explaining that without adequate procedural safeguards, "the constitutional prohibition against 'cruel and unusual punishments' would forbid [the] use" of the death penalty). One such safeguard, as determined by the vast majority of States, is that a jury, and not a judge,

should impose any sentence of death.[2]

Of the 32 States that currently authorize capital punishment, 31 require jury participation in the sentencing decision; only Montana leaves the jury with no sentencing role in capital cases. See Mont. Code Ann. §§46–18–301, 46–18–305 (2013). In 27 of those 31 States, plus the federal system, 18 U. S. C. §3593, the jury's decision to impose life imprisonment is final and may not be disturbed by the trial judge under any circumstance. That leaves four States in which the jury has a role in sentencing but is not the final decisionmaker. In Nebraska, the jury is responsible for finding aggravating circumstances, while a three-judge panel determines mitigating circumstances and weighs them against the aggravating circumstances to make the ultimate sentencing decision. See Neb. Rev. Stat. §§29–2520, 29–2521 (2008). Three States—Alabama, Delaware, and Florida—permit the trial judge to override the jury's sentencing decision.

In *Spaziano* v. *Florida*, 468 U. S. 447 (1984), we upheld Florida's judicial-override sentencing statute. And in *Harris* v. *Alabama*, 513 U. S. 504 (1995), we upheld Alabama's similar statute. Eighteen years have passed since we decided *Harris*, and in my view, the time has come for us to reconsider that decision. Cf. *Roper*, 543 U. S., at 555

--------

[2] It is perhaps unsurprising that the national consensus has moved towards a capital sentencing scheme in which the jury is responsible for imposing capital punishment. Because "'capital punishment is an expression of society's moral outrage at particularly offensive conduct,'" *Harris* v. *Alabama*, 513 U. S. 504, 518 (1995) (Stevens, J., dissenting), jurors, who "express the conscience of the community on the ultimate question of life or death," *Witherspoon* v. *Illinois*, 391 U. S. 510, 519 (1968), seem best-positioned to decide whether the need for retribution in a particular case mandates imposition of the death penalty. See *Harris*, 513 U. S., at 518 (Stevens, J., dissenting) ("A capital sentence expresses the community's judgment that no lesser sanction will provide an adequate response to the defendant's outrageous affront to humanity").

(reconsidering after 16 years the issue decided in *Stanford* v. *Kentucky*, 492 U. S. 361 (1989)); *Atkins* v. *Virginia*, 536 U. S. 304, 307 (2002) (reconsidering after 13 years the issue decided in *Penry* v. *Lynaugh*, 492 U. S. 302 (1989)).

In the nearly two decades since we decided *Harris*, the practice of judicial overrides has become increasingly rare. In the 1980's, there were 125 life-to-death overrides: 89 in Florida, 30 in Alabama, and 6 in Indiana. In the 1990's, there were 74: 26 in Florida, 44 in Alabama, and 4 in Indiana.[3] Since 2000, by contrast, there have been only 27 life-to-death overrides, 26 of which were by Alabama judges.[4]



As these statistics demonstrate, Alabama has become a clear outlier. Among the four States that permitted judi-

——————

[3] See Radelet, Overriding Jury Sentencing Recommendations in Florida Capital Cases: An Update and Possible Half-Requiem, 2011 Mich. State L. Rev. 793, 818 (2011) (listing overrides in Indiana); *id.*, at 828 (listing overrides in Florida); *id.*, at 825–827 (listing overrides in Alabama).

[4] The 27th death sentence by judicial override, which occurred in Delaware, was eventually reduced to a life sentence. See n. 5, *infra.*

cial overrides at the time of *Harris*, Alabama now stands as the only one in which judges continue to override jury verdicts of life without parole. One of the four States, Indiana, no longer permits life-to-death judicial overrides at all. See Ind. Code §35–50–2–9(e) (2004). Only one defendant in Delaware has ever been condemned to death by a judicial life-to-death override, and the Delaware Supreme Court overturned his sentence.[5] And no Florida judge has overridden a jury's verdict of a life sentence since 1999.[6] In sum, whereas judges across three States overrode roughly 10 jury verdicts per year in the 1980's and 1990's, a dramatic shift has taken place over the past decade: Judges now override jury verdicts of life in just a single State, and they do so roughly twice a year.

What could explain Alabama judges' distinctive proclivity for imposing death sentences in cases where a jury has already rejected that penalty? There is no evidence that criminal activity is more heinous in Alabama than in other States, or that Alabama juries are particularly lenient in

––––––––––

[5] One Delaware judge has used the override to impose a death sentence in two cases involving the same defendant. On appeal, the Delaware Supreme Court twice vacated the death sentence, and ultimately ordered the trial court to impose a life sentence. See *Garden* v. *State*, 815 A. 2d 327, 331–333 (2003); *Garden* v. *State*, 844 A. 2d 311, 318 (2004).

[6] Even after this Court upheld Florida's capital sentencing scheme in *Spaziano* v. *Florida*, 468 U. S. 447 (1984), the practice of judicial overrides consistently declined in that State. Since 1972, 166 death sentences have been imposed in Florida following a jury recommendation of life imprisonment. Between 1973 and 1989, an average of eight people was sentenced to death on an override each year. That average number dropped by 50 percent between 1990 and 1994, and by an additional 70 percent from 1995 to 1999. The practice then stopped completely. It has been more than 14 years since the last life-to-death override in Florida; the last person sentenced to death after a jury recommendation of life imprisonment was Jeffrey Weaver, sentenced in August 1999.

weighing aggravating and mitigating circumstances. The only answer that is supported by empirical evidence is one that, in my view, casts a cloud of illegitimacy over the criminal justice system: Alabama judges, who are elected in partisan proceedings, appear to have succumbed to electoral pressures. See Symposium, Politics and the Death Penalty: Can Rational Discourse and Due Process Survive the Perceived Political Pressure? 21 Fordham Urban L. J. 239, 256 (1994) (comments of Bryan Stevenson) (concluding, based on "a mini-multiple regression analysis of how the death penalty is applied and how override is applied, [that] there is a statistically significant correlation between judicial override and election years in most of the counties where these overrides take place"); see also Equal Justice Initiative, The Death Penalty in Alabama: Judge Override, at 16, http://eji.org/files/ Override_Report.pdf (as visited on November 15, 2013, and available in Clerk of Court's case file) (hereinafter Override Report) (noting that the proportion of death sentences imposed by override in Alabama is elevated in election years). One Alabama judge, who has overridden jury verdicts to impose the death penalty on six occasions, campaigned by running several advertisements voicing his support for capital punishment. One of these ads boasted that he had "'presided over more than 9,000 cases, including some of the most heinous murder trials in our history,'" and expressly named some of the defendants whom he had sentenced to death, in at least one case over a jury's contrary judgment. Override Report 16. With admirable candor, another judge, who has overridden one jury verdict to impose death, admitted that voter reaction does "'have some impact, especially in high-profile cases.'" Velasco, More Judges Issue Death Despite Jury, Birmingham News, July 17, 2011, p. 11A. "'Let's face it,'" the judge said, "'we're human beings. I'm sure it affects some more than others.'" *Id.*, at 12A. Alabama judges, it

seems, have "ben[t] to political pressures when pronouncing sentence in highly publicized capital cases." *Harris*, 513 U. S., at 520 (Stevens, J., dissenting).

By permitting a single trial judge's view to displace that of a jury representing a cross-section of the community, Alabama's sentencing scheme has led to curious and potentially arbitrary outcomes. For example, Alabama judges frequently override jury life-without-parole verdicts even in cases where the jury was unanimous in that verdict.[7] In many cases, judges have done so without offering a meaningful explanation for the decision to disregard the jury's verdict. In sentencing a defendant with an IQ of 65, for example, one judge concluded that "'[t]he sociological literature suggests Gypsies intentionally test low on standard IQ tests.'"[8] Override Report 20 (quoting Sentencing Order in *State* v. *Neal*, No. 87–520 (Baldwin Cty Cir. Ct., May 17, 1990)). Another judge, who was facing reelection at the time he sentenced a 19-year-old defendant, refused to consider certain mitigating circumstances found by the jury, which had voted to recommend a life-without-parole sentence. He explained his sensitivity to public perception as follows: "'If I had not imposed the

_____

[7] As recently as May 2011, an Alabama judge overrode a 12-to-0 jury verdict to sentence Courtney Lockhart to death. Lockhart, a former army soldier and Iraq war veteran, was convicted of murdering a college student, Lauren Burk. The jury recommended life imprisonment without the possibility of parole, influenced by mitigating circumstances relating to severe psychological problems Lockhart suffered as a result of his combat in Iraq. (Lockhart spent 16 months in Iraq; 64 of the soldiers in his brigade never made it home, including Lockhart's best friend. The soldiers who survived all exhibited signs of posttraumatic stress disorder and other psychological conditions. Twelve of them have been arrested for murder or attempted murder.). The trial judge nonetheless imposed the death penalty.

[8] After this sentence was reversed on appeal, the State agreed that the defendant was exempt from the death penalty because he is mentally retarded. Override Report 20.

death sentence, I would have sentenced three black people to death and no white people.'" Override Report 20 (quoting Tr. of Sentencing Hearing in *State* v. *Waldrop*, No. 98–162 (Randolph Cty Cir. Ct., July 25, 2000)). These results do not seem to square with our Eighth Amendment jurisprudence, see *Furman*, 408 U. S., at 274 (Brennan, J., concurring) ("In determining whether a punishment comports with human dignity, we are aided by [the principle] that the State must not arbitrarily inflict a severe punishment"); *Gregg*, 428 U. S., at 188 (joint opinion of Stewart, Powell, and Stevens, JJ.) ("*Furman* held that [the death penalty] could not be imposed under sentencing procedures that created a substantial risk that it would be inflicted in an arbitrary and capricious manner"), and they raise important concerns that are worthy of this Court's review.

## III

There is a second reason why Alabama's sentencing scheme deserves our review. Since our decisions in *Spaziano* and *Harris*, our Sixth Amendment jurisprudence has developed significantly. Five years after we decided *Harris*, we held in *Apprendi* v. *New Jersey*, 530 U. S. 466 (2000), that the Sixth Amendment does not permit a defendant to be "expose[d] . . . to a penalty exceeding the maximum he would receive if punished according to the facts reflected in the jury verdict alone." *Id.,* at 483 (emphasis deleted). When "a State makes an increase in a defendant's authorized punishment contingent on the finding of fact," we explained, "that fact—no matter how the State labels it—must be found by a jury beyond a reasonable doubt." *Ring*, 536 U. S., at 602 (citing *Apprendi*, 530 U. S., at 482–483); see also *id.*, at 499 (SCALIA, J., concurring) ("[A]ll the facts which must exist in order to subject the defendant to a legally prescribed punishment *must* be found by the jury").

Two years later, we applied the *Apprendi* rule in *Ring* v. *Arizona* to invalidate Arizona's capital sentencing scheme, which permitted the trial judge to determine the presence of aggravating factors required for imposition of the death penalty. 536 U. S., at 609. We made clear that "[c]apital defendants, no less than noncapital defendants, . . . are entitled to a jury determination of any fact on which the legislature conditions an increase in their maximum punishment." *Id.,* at 589. And we overruled our earlier decision in *Walton* v. *Arizona*, 497 U. S. 639 (1990), by holding that the jury—not the judge—must find an aggravating circumstance that is necessary for the imposition of the death penalty. *Ring*, 536 U. S., at 609. "Because Arizona's enumerated aggravating factors operate as 'the functional equivalent of an element of a greater offense,'" we explained, "the Sixth Amendment requires that they be found by a jury." *Ibid.* (quoting *Apprendi*, 530 U. S., at 494, n. 19).

The very principles that animated our decisions in *Apprendi* and *Ring* call into doubt the validity of Alabama's capital sentencing scheme. Alabama permits a defendant to present mitigating circumstances that weigh against imposition of the death penalty. See Ala. Code §§13A–5–51, 13A–5–52. Indeed, we have long held that a defendant has a constitutional right to present mitigating evidence in capital cases. See *Eddings* v. *Oklahoma*, 455 U. S. 104, 110 (1982). And a defendant is eligible for the death penalty in Alabama only upon a specific factual finding that any aggravating factors outweigh the mitigating factors he has presented. See Ala. Code §§13A–5–46(e), 13A–5–47(e). The statutorily required finding that the aggravating factors of a defendant's crime outweigh the mitigating factors is therefore necessary to impose the death penalty. It is clear, then, that this factual finding exposes the defendant to a greater punishment than he would otherwise receive: death, as opposed to life without

parole. Under *Apprendi* and *Ring*, a finding that has such an effect must be made by a jury.

The facts of this case underscore why Alabama's statute might run afoul of *Apprendi* and *Ring*. After the State and Woodward presented evidence at the sentencing hearing, the jury found two aggravating factors, but it determined that the mitigating factors outweighed those aggravating factors, and it voted to recommend a sentence of life imprisonment without the possibility of parole. The judge then heard additional evidence before reweighing the aggravating and mitigating factors to reach the opposite conclusion from the jury. With respect to the first mitigating circumstance—Woodward's relationship with his children—the judge noted that he was "underwhelmed" by Woodward's family situation in light of the additional evidence that only he had heard. App. to Pet. for Cert. 80 (amended sentencing order). Rejecting the conclusion that Woodward had a positive influence on the lives of his young children, the judge opined: "What young child does not adore a parent?" *Ibid.* The judge further reasoned that Woodward's criminal history rendered him a "very poor parenting role model." *Id.,* at 81. Moving to the second mitigating factor—Woodward's traumatic childhood—the judge concluded that the evidence of problems in Woodward's childhood did not "withstand close scrutiny." *Ibid.* He noted that "no documentation of abuse was introduced"; speculated that Woodward's "truncated academic career may well have been the result of his bringing weapons to school, not the result of family issues"; suggested that Woodward's mother did not actually send him to live with his abusive father because no mother would "sen[d] her children to live alone, unprotected with an abusive man"; and found that it "strain[ed] logic to accept the story that [Woodward's] father evicted him." *Ibid.* The judge opined that "[w]hile [Woodward's] childhood was not the stuff of fairytales, his youth appear[ed]

more idyllic than those of others [Woodward] called to testify." *Ibid.* And he concluded that the aggravating factors "far outweigh[ed] the mitigating factors." *Id.,* at 82.[9] In other words, the judge imposed the death penalty on Woodward only because he disagreed with the jury's assessment of the facts.

Under our *Apprendi* jurisprudence, as it has evolved since *Harris* was decided, a sentencing scheme that permits such a result is constitutionally suspect.

\*    \*    \*

Eighteen years have passed since we last considered Alabama's capital sentencing scheme, and much has changed since then. Today, Alabama stands alone: No other State condemns prisoners to death despite the considered judgment rendered by a cross-section of its citizens that the defendant ought to live. And *Apprendi* and its progeny have made clear the sanctity of the jury's role in our system of criminal justice. Given these developments, we owe the validity of Alabama's system a fresh look. I therefore respectfully dissent from the denial of certiorari.

---

[9] In discounting the jury's finding that the mitigating circumstances outweighed the aggravating circumstances, the judge noted that he had access to information that the jury did not hear (referring to the additional factfinding he had conducted after the jury made its findings), and "surmise[d]" that some members of the jury were "daunted by the task [of sentencing]" and fell prey to defense counsel's "powerful, emotional appeal." App. to Pet. for Cert. 82 (amended sentencing order).

Appendix to opinion of SOTOMAYOR, J.

### APPENDIX
### Life-to-Death Overrides in Alabama*

| # | Name | County | Year of Sentence | Jury vote (Life-Death) |
|---|------|--------|------------------|------------------------|
| 1 | Jones, Arthur | Baldwin | 1982 | Unknown |
| 2 | Lindsey, Michael | Mobile | 1982 | 11–1 |
| 3 | Murry, Paul | Montgomery | 1982 | 11–1 |
|   | Murry, Paul | Montgomery | 1988 | 12–0 |
| 4 | Acres, Gregory | Montgomery | 1983 | 7–5 |
| 5 | Harrell, Ed | Jefferson | 1983 | 11–1 |
| 6 | Neelley, Judy | De Kalb | 1983 | 10–2 |
| 7 | Crowe, Coy | Jefferson | 1984 | 12–0 |
| 8 | Freeman, Darryl | Madison | 1984 | 12–0 |
| 9 | Hays, Henry | Mobile | 1984 | 7–5 |
| 10 | Turner, Calvin | Etowah | 1984 | 9–3 |
| 11 | Johnson, Anthony | Morgan | 1985 | 9–3 |
| 12 | Musgrove, Phillip | Madison | 1985 | 10–2 |
| 13 | Owens, Charles | Russell | 1985 | 9–3 |
| 14 | Tarver, Robert | Russell | 1985 | 7–5 |

---

*This list includes defendants identified in a July 2011 report by the Equal Justice Initiative, see The Death Penalty in Alabama: Judge Override, at http://eji.org/files/Override_Report.pdf (as visited on November 15, 2013, and available in Clerk of Court's case file), and a 2011 law review article, see Radelet, Overriding Jury Sentencing Recommendations in Florida Capital Cases: An Update and Possible Half-Requiem, 2011 Mich. State L. Rev. 793, as well as defendants we are aware of who have been sentenced to death by judicial override subsequent to the publishing of those reports.

Appendix to opinion of SOTOMAYOR, J.

| # | Name | County | Year of Sentence | Jury vote (Life-Death) |
|---|------|--------|------------------|------------------------|
| 15 | Thompson, Steven | Madison | 1985 | 10–2 |
| 16 | Frazier, Richard | Mobile | 1986 | Unknown |
|  | Frazier, Richard | Mobile | 1990 | Unknown |
| 17 | Hooks, Joseph | Montgomery | 1986 | 7–5 |
| 18 | Boyd, William | Calhoun | 1987 | 7–5 |
| 19 | Tarver, Bobby | Mobile | 1987 | 7–5 |
| 20 | Duncan, Joe | Dallas | 1988 | 10–2 |
| 21 | McMillian, Walter | Monroe | 1988 | 7–5 |
| 22 | Wesley, Ronald | Mobile | 1988 | 8–4 |
| 23 | Coral, Robert | Montgomery | 1989 | 8–4 |
| 24 | Hadley, J.C. | Baldwin | 1989 | 12–0 |
| 25 | Jackson, Willie | Coffee | 1989 | 7–5 |
| 26 | Parker, John | Colbert | 1989 | 10–2 |
| 27 | Russaw, Henry | Pike | 1989 | 8–4 |
| 28 | Stephens, Victor | Hale | 1989 | 7–5 |
| 29 | White, Leroy | Madison | 1989 | 9–3 |
| 30 | Flowers, Clayton | Baldwin | 1990 | 11–1 |
| 31 | Harris, Louise | Montgomery | 1990 | 7–5 |
| 32 | Neal, John | Baldwin | 1990 | 10–2 |
| 33 | Sockwell, Michael | Montgomery | 1990 | 7–5 |
| 34 | Tomlin, Phillip | Mobile | 1990 | 12–0 |
|  | Tomlin, Phillip | Mobile | 1994 | 12–0 |
|  | Tomlin, Phillip | Mobile | 1999 | 12–0 |

Appendix to opinion of SOTOMAYOR, J.

| # | Name | County | Year of Sentence | Jury vote (Life-Death) |
|---|------|--------|------------------|------------------------|
| 35 | Williams, Herbert | Mobile | 1990 | 9–3 |
| 36 | Beard, David | Marshall | 1991 | 8–4 |
| 37 | Bush, William | Montgomery | 1991 | 12–0 |
| 38 | Giles, Arthur | Morgan | 1991 | Unknown |
| 39 | Carr, Patrick | Jefferson | 1992 | 12–0 |
| 40 | Gentry, Ward | Jefferson | 1992 | 7–5 |
| 41 | McGahee, Earl | Dallas | 1992 | 10–2 |
| 42 | Padgett, Larry | Marshall | 1992 | 9–3 |
| 43 | Rieber, Jeffrey | Madison | 1992 | 7–5 |
| 44 | Knotts, William | Montgomery | 1993 | 9–3 |
| 45 | McNair, Willie | Montgomery | 1993 | 8–4 |
| 46 | Burgess, Alonzo | Jefferson | 1994 | 8–4 |
| 47 | Burgess, Roy | Morgan | 1994 | 10–2 |
| 48 | Madison, Vernon | Mobile | 1994 | 8–4 |
| 49 | Myers, Robin | Morgan | 1994 | 9–3 |
| 50 | Roberts, David | Marion | 1994 | 7–5 |
| 51 | Scott, William | Geneva | 1994 | 12–0 |
| 52 | Barnes, Michael | Mobile | 1995 | 9–3 |
| 53 | Clark, Andrew | Henry | 1995 | 9–3 |
| 54 | Gregory, William | Baldwin | 1995 | 10–2 |
| 55 | Norris, Michael | Jefferson | 1995 | 8–4 |
| 56 | Ponder, Terry | Cullman | 1995 | 8–4 |
| 57 | Smith, Ronald | Madison | 1995 | 7–5 |

Appendix to opinion of SOTOMAYOR, J.

| # | Name | County | Year of Sentence | Jury vote (Life-Death) |
|---|------|--------|------------------|------------------------|
| 58 | Evans, Edward | Macon | 1996 | 12–0,9–3 |
| 59 | Hyde, James | Marshall | 1996 | 7–5 |
| 60 | McGowan, James | Conecuh | 1996 | 7–5 |
| 61 | Smith, Kenneth | Jefferson | 1996 | 11–1 |
| 62 | Apicella, Andrew | Jefferson | 1997 | 8–4 |
| 63 | Carroll, Taurus | Jefferson | 1998 | 10–2 |
| 64 | Dorsey, Ethan | Conecuh | 1998 | 11–1 |
| 65 | Ferguson, Thomas | Mobile | 1998 | 11–1 |
| 66 | Jackson, Shonelle | Montgomery | 1998 | 12–0 |
| 67 | Taylor, Jarrod | Mobile | 1998 | 7–5 |
| 68 | Wimberly, Shaber | Dale | 1998 | 10–2 |
|  | Wimberly, Shaber | Dale | 2001 | 7–5 |
| 69 | Hodges, Melvin | Lee | 1999 | 8–4 |
| 70 | Waldrop, Bobby | Randolph | 1999 | 10–2 |
| 71 | Lee, Jeffrey | Dallas | 2000 | 7–5 |
| 72 | Martin, George | Mobile | 2000 | 8–4 |
| 73 | Morrow, John | Baldwin | 2002 | 8–4 |
| 74 | Moore, Daniel | Morgan | 2003 | 8–4 |
| 75 | Eatmon, Dionne | Jefferson | 2005 | 9–3 |
| 76 | Harris, Westley | Crenshaw | 2005 | 7–5 |
| 77 | Spencer, Kerry | Jefferson | 2005 | 9–3,10–2 |
| 78 | Yancey, Vernon | Russell | 2005 | 7–5 |
| 79 | Billups, Kenneth | Jefferson | 2006 | 7–5 |

Appendix to opinion of SOTOMAYOR, J.

| # | Name | County | Year of Sentence | Jury vote (Life-Death) |
|---|------|--------|------------------|------------------------|
| 80 | Doster, Oscar | Covington | 2006 | 12–0 |
| 81 | Killingsworth, Jimmy | Bibb | 2006 | 7–5 |
| 82 | Lane, Thomas | Mobile | 2006 | 8–4 |
| 83 | Sneed, Ulysses | Morgan | 2006 | 7–5 |
| 84 | Mitchell, Brandon | Jefferson | 2007 | 10–2 |
| 85 | Stanley, Anthony | Colbert | 2007 | 8–4 |
| 86 | Jackson, Demetrius | Jefferson | 2008 | 10–2 |
| 87 | Spradley, Montez | Jefferson | 2008 | 10–2 |
| 88 | Woodward, Mario | Montgomery | 2008 | 8–4 |
| 89 | McMillan, Calvin | Elmore | 2009 | 8–4 |
| 90 | Scott, Christie | Franklin | 2009 | 7–5 |
| 91 | Riggs, Jeffery | Jefferson | 2010 | 10–2 |
| 92 | White, Justin | Jefferson | 2010 | 9–3 |
| 93 | Lockhart, Courtney | Lee | 2011 | 12–0 |
| 94 | Shanklin, Clayton | Walker | 2012 | 12–0 |
| 95 | Henderson, Gregory | Lee | 2012 | 9–3 |