HOLLAND, Justice,
concurring in the Majority per curiam, with whom Chief Justice STRINE and Justice SEITZ join:
The State has charged the Defendant, Benjamin Rauf (“Rauf”) by indictment with one count of First Degree Intentional Murder, one count of First Degree Felony Murder, Possession of a Firearm During those Felonies and First Degree Robbery. The State has expressed its intention to seek the penalty of death in the event Rauf is convicted on either of the First Degree Murder counts. On January 12, 2016, the United States Supreme Court held in Hurst v. Florida,[1] that Florida’s capital sentencing scheme was unconstitutional because “[t]he Sixth Amendment requires a jury, not a judge, to find each fact necessary to impose a sentence of death.”[2] On January 25, 2016, the Superior Court certified five questions of law to this Court for disposition in accordance with Rule 41 of the Supreme Court rules. On January 28, 2016, this Court accepted revised versions of the questions certified by the Superior Court and designated Rauf as the appellant and the State as the appellee.[3] What follows in this opinion are the reasons for my answers to each question.

Question One

Under the Sixth Amendment to the United States Constitution, may a sentencing judge in a capital jury proceeding, independent of the jury, find the existence of “any aggravating circumstance,” statutory or non-statutory, that has been alleged by the State for weighing in the selection phase of a capital sentencing proceeding?
The answer to question one is no. In Hurst, the United States Supreme Court held that: “The Sixth Amendment requires a jury, not a judge, to find each fact neces *483 sary to impose a sentence of death.”[4] In Hurst, the Supreme Court applied its prior holdings in Apprendi v. New Jersey,[5] and Ring v. Arizona.[6] In Apprendi, the Supreme Court held “that any fact that ‘expose[s] the defendant to a greater punishment than that authorized by the jury’s guilty verdict’ is an ‘element’ that must be submitted to a jury.”[7]
In Hurst, the Supreme Court stated: “In Ring, we concluded that Arizona’s capital sentencing scheme violated Apprendi’s rule because the State allowed a judge to find the facts necessary to sentence a defendant the death.”[8] The relevant inquiry in Hurst, as in Ring, was what maximum sentence the defendant could receive in the absence of judicial fact-finding. The United States Supreme Court answered that inquiry, as follows:
As with Timothy Ring, the maximum punishment Timothy Hurst could have received without any judge-made findings was life in prison without parole. As with Ring, a judge increased Hurst’s authorized punishment based on her own factfinding. In light of Ring, we hold that Hurst’s sentence violates the Sixth Amendment.[9]
The Florida sentencing statute at issue in Hurst did “not make a defendant eligible for death until ‘findings by the court that such person shall be punished by death.’”[10] The holding in Hurst means that when a state statute requires a trial judge, instead of a jury, to make factual findings that are necessary before a death sentence can be imposed, the Sixth Amendment is violated.
In Kansas v. Carr,[11] the United States Supreme Court held that the finding that aggravating circumstances exist is without question a “purely factual determination.” [12] Thus, finding the existence of aggravating circumstances is the functional equivalent of a criminal element in support of the ultimate penalty. In Hurst, the United States Supreme Court overruled Spaziano v. Florida,[13] and Hildwin v. Florida,[14] and held sentencing schemes that “allow a sentencing judge to find an aggravating circumstance, independent of a jury’s factfinding, that is necessary for imposition of the death penalty,” is impermissible under the Sixth Amendment.[15]
The Delaware death penalty statutes requires the State to give “[njotice in writing of any aggravating circumstances [statutory and non-statutory] ... prior to the punishment hearing, and after the verdict on guilt.”[16] The Delaware statute requires the judge to instruct the jury that “in *484 order to find the existence of a statutory aggravating circumstances” they must do so beyond a reasonable doubt and must be unanimous.[17] The Delaware statute also requires that “[a]s to any statutory aggravating circumstances ... which were alleged but for which the jury is not unanimous, the jury shall report the number of affirmative and negative votes on each such [statutory aggravating] circumstance.”[18]
The Delaware statute does not require the jury to be instructed that the existence of non-statutory aggravating circumstances must be found unanimously and beyond a reasonable doubt. It does not require the jury to specifically identify any of the non-statutory aggravating circumstances that it found to exist. It also does not require the jury to report the affirmative and negative votes on any alleged non-statutory aggravating circumstance for which there was not unanimity.
After the jury finds at least one statutory aggravating circumstance, the defendant is death eligible. However, as with Timothy Ring and Timothy Hurst, the maximum punishment a defendant in Delaware can receive without any additional judge-made factual findings is life in prison.[19] Under the current Delaware capital sentencing scheme, the judge alone, without knowledge of which, if any, non-statutory aggravating circumstances the jury found unanimously and beyond a reasonable doubt or otherwise, independently finds the existence of non-statutory aggravating circumstances.[20] As with the capital sentencing schemes at issue in Ring and Hurst, a Delaware judge alone can increase a defendant’s jury authorized punishment of life to a death sentence, based on her own additional factfinding of non-statutory aggravating circumstances. In light of Hurst’s application of Ring, this violates the Sixth Amendment. Accordingly, that provision in the Delaware death penalty statute is unconstitutional.

Question Two

If the finding of the existence of “any aggravating circumstance,” statutory or non-statutory, that has been alleged by the State for weighing in the selection phase of a capital sentencing proceeding must be made by a jury, must the jury make the finding unanimously and beyond a reasonable doubt to comport with federal constitutional standards?
The answer to question two is yes. First, unanimous verdicts are an essential component of the Sixth Amendment guarantee to the right to a trial by jury: “[T]he historical foundation for our recognition of these principles extends down centuries into the common law. ‘[T]o guard against a spirit of oppression and tyranny,’ ... trial by jury has been understood to require that ‘the truth of every accusation ... be confirmed by the unanimous suffrage of twelve of [the defendant’s] equals and neighbours..., ”[21] Although Justice Powell wrote, in an opinion concurring in judgment with the United States Supreme Court’s plurality opinion in Apodaca v. Oregon,[22] that non-unanimous jury verdicts were permissible,[23] his reasoning has since *485 been called into question.[24] Moreover, when Justice Scalia concurred in Appren-di, he wrote that charges against the accused, and the maximum exposure the accused faces, must be determined “beyond a reasonable doubt by the unanimous vote of 12 of his fellow citizens.”[25] Nevertheless, there is no doubt that unanimous jury-verdicts are required by the Delaware Constitution even though that question is not before us.[26] Second, in Hurst, the Supreme Court stated: “The Sixth Amendment provides: ‘In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury..,This right, in conjunction with the Due Process Clause, requires that each element of a crime be proved to a jury beyond a reasonable doubt.”[27] As succinctly summarized by Justice Scalia, when he concurred in Ring: “[T]he fundamental meaning of the jury-trial guarantee of the Sixth Amendment is that all facts essential to imposition of the level of punishment that the defendant receives — whether the statute calls them elements of the offense, sentencing factors, or Maiy Jane — must be found by the jury beyond a reasonable doubt.”[28]

Question Three

Does the Sixth Amendment to the United States Constitution require a jury, not a sentencing judge, to find that the aggravating circumstances found to exist outweigh the mitigating circumstances found to exist because, under 11 Del. C. § 4209, this is the critical finding upon which the sentencing judge “shall impose a sentence of death”?
The answer to question three is yes. This Court has recognized that the weighing determination in Delaware’s statutory sentencing scheme is a factual finding necessary to impose a death sentence.[29] “[A] judge cannot sentence a defendant to death without finding that the aggravating factors outweigh the mitigating factors ....”[30] The relevant “maximum” sentence, for Sixth Amendment purposes, that can be imposed under Delaware law, in the absence of any judge-made findings on the relative weights of the aggravating and mitigating factors, is life imprisonment. In Hurst, the Supreme Court noted “the maximum punishment Timothy Hurst could have received without any judge-made findings was life in prison without parole.”[31]
As in Florida’s statutory scheme that was held to be unconstitutional in Hurst, in Delaware, the judge alone “must find the facts that sufficient aggravating cir *486 cumstances exist and that there are insufficient mitigating circumstances to outweigh the aggravating circumstances” before a death sentence may be imposed.[32] When the Delaware death penalty statute was amended in 2003, the synopsis to that legislation stated, in relevant part:
This Act will reverse the Delaware Supreme Court’s judicial misinterpretation of Delaware’s death penalty statute by repealing the Tedder standard adopted by the Supreme Court in [Garden v State], It will clarify that it is and has been the intent of the General Assembly that while the sentencing judge must consider a jury’s recommended finding on the question of whether the aggravating circumstances found to exist outweigh the mitigating circumstances found to exist, he or she shall not be bound by the recommendation, but instead shall give it such weight as he or she deems appropriate under the circumstances present in a given case.[33]
In Hurst, the Supreme Court explained why Delaware’s advisory system, in which the jury provides its non-binding recommendation whether or not the aggravating circumstances outweigh the mitigating circumstances, does not qualify as a “finding” by a jury for Sixth Amendment purposes.[34] After the decision in Hurst, when a statute provides for the judge alone to make the factual findings necessary for the imposition of a death sentence, it violates Sixth Amendment.
In 2003, in Brice v State,[35] this Court held that the Delaware statute did not violate the Sixth Amendment under Ring.[36] In Brice, this Court determined that the jury’s verdict finding proof of a statutory aggravating circumstance satisfied the Sixth Amendment because it was this death eligibility finding alone that served to increase the maximum punishment to death.[37] This Court’s holding in Brice was based upon the United States Supreme Court’s decision in Hildwin.[38] However, in Hurst, the decisions in Hild-win and Spaziano were both “overruled to the extent they allow a sentencing judge to find an aggravating circumstance, independent of a jury’s factfinding, that is necessary for imposition of the death penalty.”[39] Thus, just as “[tjime and subsequent cases have washed away the logic of Spaziano and Hildwin,” the reasoning of Brice is no longer viable following the decision Hurst.
The only constitutional infirmity at issue in Ring and Hurst was the judicial determination of aggravating circumstances. On the other hand, Woodward v. Alabama,[40] involved a challenge to Alabama’s capital punishment scheme, which allows judges to independently weigh aggravating and mitigating circumstances and impose death sentences, even where a jury has recommended a sentence of life in prison.[41] Justice Sotomayor, dissenting from the denial *487 of certiorari in Woodward made this observation:
A defendant is eligible for the death penalty in Alabama only upon a specific factual finding that any aggravating factors outweigh the mitigating factors he has presented. The statutorily required finding that the aggravating factors of a defendant’s crime outweigh the mitigating factors is therefore necessary to impose the death penalty. It is clear, then, that this factual finding exposes the defendant to a greater punishment than he would otherwise receive: death, as opposed to life without parole. Under Ap-prendi and Ring, a finding that has such an effect must be made by a jury.[42]
Justice Sotomayor was the author of Hurst, which held: “The Sixth Amendment requires a jury, not a judge, to find each fact necessary to impose a sentence of death.”[43] Although the United States Supreme Court’s holding in Hurst only specifically invalidated a judicial determination of aggravating circumstances, it also stated unequivocally that the jury trial right recognized in Ring now applies to all factual findings necessary to impose a death sentence under a state statute. The logical extension of that broader statement in Hurst is that a jury must determine the relative weight of aggravating and mitigating circumstances.[44] Therefore, according to the broader statement in Hurst, the weighing process provision in the Delaware death penalty statute is unconstitutional because it violates the Sixth Amendment.

Question Four

If the finding that the aggravating circumstances found to exist outweigh the mitigating circumstances found to exist must be made by a jury, must the jury make that finding unanimously and beyond a reasonable doubt to comport with federal constitutional standards?
The answer to question four is yes for the same reasons given in response to question two.

Question Five

If any procedure in 11 Del. C. § 4209’s capital sentencing scheme does not comport with federal constitutional standards, can the provision for such be severed from the remainder of 11 Del. C. § 4209, and the Court proceed with instructions to the jury that comport with federal constitutional standards?
The answer to question five is no. The multiple infirmities in the Delaware death penalty statute, as a result of the United States Supreme Court’s decision in Hurst, must be addressed by the General Assembly.
VALIHURA, Justice, concurring in part and dissenting in part as to the per curiam Opinion:
■ In light of the United States Supreme Court’s decision in Hurst v. Florida,[1] this Court certified five questions from the Superior Court concerning the constitutionality of 11 Del. C. § 4209. My answers are as follows:
1. Under the Sixth Amendment to the United States Constitution, may a sentencing judge in a capital jury proceeding, independent of the jury, find the existence of “any aggravating circumstance,” statutory or non-statu-toiy, that has been alleged by the *488 State for weighing in the selection phase of a capital sentencing proceeding? Answer. Negative.
2. If the finding of the existence of “any-aggravating circumstance,” statutory or non-statutory, that has been alleged by the State for weighing in the selection phase of a capital sentencing proceeding must be made by a jury, must the jury make the finding unanimously and beyond a reasonable doubt to comport with federal constitutional standards? Answer: Negative as to unanimity (asa matter of federal law only, and not Delaware constitutional law, which requires unanimity); affirmative as to the burden of proof.
3. Does the Sixth Amendment to the United States Constitution require a jury, not a sentencing judge, to find that the aggravating circumstances found to exist outweigh the mitigating circumstances found to exist because, under 11 Del. C. § 4209, this is the critical finding upon which the sentencing judge “shall impose a sentence of death”? Answer: Negative.
4. If the finding that the aggravating circumstances found to exist outweigh the mitigating circumstances found to exist must be made by a jury, must the jury make that finding unanimously and beyond a reasonable doubt to comport with federal constitutional standards? Answer: Given my answer to Question 3, Question k is inapplicable.
5.If any procedure in 11 Del. C. § 4209’s capital sentencing scheme does not comport with federal constitutional standards, can the provision for such be severed from the remainder of 11 Del. C. § 4209, and the Court proceed with instructions to the jury that comport with federal constitutional standards? Answer: Negative.
I. CERTIFIED QUESTION 1, AS TO WHETHER A JUDGE, INDEPENDENT OF A JURY, MAY FIND AGGRAVATING CIRCUMSTANCES, SHOULD BE ANSWERED IN THE NEGATIVE
Question 1 should be answered in the negative. In Hurst, the United States Supreme Court concluded that Florida’s capital sentencing statute did not comport with Ring v. Arizona.[2] Ring “required a jury to find every fact necessary to render [a defendant] eligible for the death penalty.”[3] Because “Florida’s sentencing scheme ... required the judge alone to find the existence of an aggravating circumstance,” the Supreme Court concluded that it was unconstitutional.[4] The Hurst Court held that “[t]he Sixth Amendment requires a jury, not a judge, to find each fact necessary to impose a sentence of death.”[5] Finding that “[t]he analysis the Ring Court applied to Arizona’s sentencing scheme applie[d] equally to Florida’s,”[6] Hurst overruled *489 Spaziano v. Florida[7] and Hildwin v. Florida,[8] but only “in relevant part”[9] and “to the extent they allow a sentencing judge to find an aggravating circumstance, independent of a jury’s factfinding, that is necessary for imposition of the death penalty.” [10]
In my view, 11 Del. C. § 4209 complies with the Sixth Amendment to the United States Constitution so long as the judge finds and relies upon only those aggravating circumstances found by the jury beyond a reasonable doubt. To the extent that it permits the death penalty to be imposed as a result of aggravating circumstances found only by the judge, and not the jury, then our statute runs afoul of Hurst.[11]
There is no question that the Delaware statute permits the trial court to find aggravating factors that were never found by the jury.[12] In addition to the plain language of the statute itself, this Court’s decision in Ploof v. State,[13] which cited Ortiz v. State[14] with approval, makes this clear.[15] Because an aggravating circum *490 stance found by a judge, but not by a jury, may be necessary for imposition of the death penalty, it operates as “the functional equivalent of an element of a greater offense”[16] and the Sixth Amendment requires that it be found by a jury.[17]
The following hypothetical illustrates how 11 Del. C. § 4209 may run afoul of Hurst in the instance where a judge finds an aggravating factor, or multiple aggravating factors, not found by the jury. Assume the defendant is convicted of first-degree murder by a jury that later finds the existence of one statutory aggravating factor unanimously and beyond a reasonable doubt. The jury recommends a life sentence. The judge, without hearing any new evidence, finds three aggravating circumstances not found by the jury and gives de minimis or no weight to the aggravating factor found by the jury. She concludes that the aggravating circumstances that she found outweigh the mitigating circumstances. The judge imposes a sentence of death, ovemding the jury’s advisory recommendation primarily on the basis of the three aggravators that she found.
In my hypothetical, the court’s three independent factual findings of aggravating circumstances were “necessary for imposition of the death penalty.”[18] Absent factfinding by the court, the maximum punishment the defendant could receive under our statute is life, since the judge was not persuaded that the sole aggravating circumstance found by the jury outweighed the mitigating circumstances.[19] The plain language of Hurst provides that “[t]he Sixth Amendment requires a jury, not a judge, to find each fact necessary to impose a sentence of death.”[20]
Hurst is the next step in a progression of cases that have enhanced the jury’s role in certain, but not all, aspects of capital cases. In 2000, the United States Su *491 preme Court decided Apprendi v. New Jersey.[21] The defendant in Apprendi pled guilty to multiple felonies. Pursuant to a New Jersey statute that increased the maximum sentence from 10 years to 20 years if the court found that the defendant committed his crime with racial bias, the defendant was sentenced to a 12-year term of imprisonment after the judge found that the “hate crime” sentencing enhancement applied. On appeal, the United States Supreme Court found the defendant’s sentence to have been unconstitutionally enhanced by judicial factfind-ing. The Apprendi Court held that “[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.”[22]
Four years later, in a non-capital case, Blakely v. Washington,[23] Justice Scalia, writing for the Majority, stated that the United States Supreme Court’s “precedents make clear ... that the ‘statutory maximum’ for Apprendi purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." [24] Blakely further stated that “[w]hen a judge inflicts punishment that the jury’s verdict alone does not allow, the jury has not found all the facts “which the law makes essential to the punishment,’ and the judge exceeds his proper authority.” [25]
In Blakely, the defendant’s plea supported a maximum sentence of 53 months. But the judge imposed a 90-month sentence after finding the defendant had acted with deliberate cruelty. The State of Washington contended that there was no Apprendi violation because the maximum sentence was not 53 months, but rather the 10-year maximum corresponding to a certain classification of felonies. Rejecting that contention, the Blakely Court stated that “[t]he ‘maximum sentence’ is no more 10 years here than it was 20 years in Apprendi (because that is what the judge could have imposed upon finding a hate crime) or death in Ring (because that is what the judge could have imposed upon finding an aggravator).”[26]
In 2013, in Alleyne v. United States,[27] a non-capital case, the United States Supreme Court overruled its decision in Harris v. United States,[28] where the Court declined to extend Apprendi to facts that increased the mandatory minimum sen *492 tence but not the maximum sentence. The Harris Court held that judicial factfinding that increased the mandatory minimum did not implicate the Sixth Amendment. “Because the jury’s verdict ‘authorized the judge to impose the minimum with or without the finding,’ the Court was of the view that the factual basis for increasing the minimum sentence was not ‘essential’ to the defendant’s punishment. Instead, it merely limited the judge’s ‘choices within the authorized range.’ ”[29] Alleyne overruled Harris.
In Alleyne, the defendant was charged with using or carrying a firearm in relation to a crime of violence, which carried a five-year mandatory minimum sentence that increased to a seven-year mandatory minimum sentence if the firearm was “brandished.”[30] The jury convicted the defendant, The sentencing range supported by the jury’s verdict was five years’ imprisonment to life, but the judge, rather than the jury, found that the defendant brandished the firearm, increasing the mandatory minimum sentence from five years to seven years. The judge’s finding that the defendant brandished the firearm, the Alleyne Court held, violated the Sixth Amendment right to a jury trial.[31] Alleyne made clear that Apprendi’s definition of an element of an offense necessarily included not only facts that increased the punishment ceiling, but also those that increased the floor. As Justice Thomas wrote in Al-leyne, “[defining facts that increase a mandatory statutory minimum to be part of the substantive offense enables the defendant to predict the legally applicable penalty from the face of the indictment,” and “[i]t also preserves the historic role of the jury as an intermediary between the State and' criminal defendants.”[32] The United States Supreme Court further concluded in Alleyne that
the essential Sixth Amendment inquiry is whether a fact is an element of the crime. When a finding of fact alters the legally prescribed punishment so as to aggravate it, the fact necessarily forms a constituent part of a new offense and must be submitted to the jury. It is no answer to say that the defendant could have received the same sentence with or without that fact.[33]
Accordingly, the Supreme Court stated that “if a judge were to find a fact that increased the statutory maximum sen *493 tence, such a finding would violate the Sixth Amendment, even if the defendant ultimately received a sentence falling within the original sentencing range (i.e., the range applicable without that aggravating fact).”[34] Apprendi, Ring, Blakely, Alleyne, and Hurst—decided in the years 2000, 2002, 2004, 2013, and 2016, respectively— can be read as a linear development of the United States Supreme Court’s Sixth Amendment jurisprudence.[35]
This Court’s principal ease upholding the constitutionality of the post-Amy variant of 11 Del. C. § 4209, Brice v. State;[36] is no longer viable as a result of Hurst. Brice’s statement that “a finding of non-statutory factors does not ‘increase’ the maximum penalty that a defendant can receive”[37] conflicts with Hurst’s plain language, which prohibits judicial findings of aggravating circumstances that are “necessary for imposition of the death penalty.”[38] As my hypothetical illustrates, the judge was statutorily required to sentence the defendant to life because she would not have imposed death absent her independent findings of additional aggravating circumstances. Thus, the additional judicial findings were necessary for imposition of the death penalty.[39]. If it remained unclear how the principles espoused in Alleyne and Blakely apply in the. capital sentencing context, the Supreme Court’s language in Hurst makes clear that the foundational “underpinnings” of Brice have been “eroded.”[40]
II. CERTIFIED QUESTION 2 SHOULD BE ANSWERED IN THE NEGATIVE AS TO UNANIMITY AND IN THE AFFIRMATIVE AS TO THE BURDEN OF PROOF
Question 2 should be answered in the negative with respect to unanimity, as a matter of federal constitutional law — not as a matter of the Delaware Constitution,[41] *494 However, Question 2 should be answered in the affirmative as to the burden of proof.
Under Delaware’s present capital sentencing framework, the jury’s primary function in the sentencing phase is to make a factual finding concerning the existence of a statutory aggravating circumstance. The jury also makes a sentencing recommendation regarding whether the aggravating circumstances found to exist outweigh the mitigating circumstances found to exist.
In Apodaca v. Oregon,[42] the United States Supreme Court held that although the Sixth Amendment right to trial by jury requires a unanimous jury verdict in federal criminal trials, it does not require a unanimous jury verdict in State criminal trials.[43] There, the Supreme Court considered whether convictions of crimes by less-than-unanimous juries violated the right to trial by jury in criminal cases under the Sixth Amendment. A plurality of the Court “perceive[d] no difference between juries required to act unanimously and those permitted to convict or acquit by votes of 10 to two or 11 to one.”[44] The plurality con-eluded that “in either case, the interest of the defendant in having the judgment of his peers interposed between himself and the officers of the State who prosecute and judge him is equally well served.”[45]
In McDonald v. City of Chicago,[46] the United States Supreme Court observed that the outcome in Apodaca “was the result of an unusual division among the Justices,” where “four Justices took the view that the Sixth Amendment does not require unanimous jury verdicts in either federal or state criminal trials, and four other Justices took the view that the Sixth Amendment requires unanimous jury verdicts in federal and state criminal trials.”[47] The McDonald Court nevertheless observed that “Justice Powell’s concurrence in the [Apodaca] judgment broke the tie, and he concluded that the Sixth Amendment requires juror unanimity in federal, but not state, cases.”[48]
More recently, in Hurst, the petitioner challenged the viability of Apodaca, but the Supreme Court declined to address whether the Sixth Amendment right to trial by jury requires a unanimous jury *495 verdict in State criminal trials.[49] Thus, Apodaca remains the federal constitutional law. Apodaca’s precariousness notwithstanding, as a matter of the Delaware Constitution, the jury must unanimously find beyond a reasonable doubt the existence of at least one statutory aggravating factor as a predicate to the imposition of the death penalty.[50] But, as currently interpreted, the Sixth Amendment does not require jury unanimity in State criminal trials.
With respect to the burden of proof, the Sixth Amendment, as interpreted in Ap-prendi, Ring, and Hurst, requires that “[i]f a State makes an increase in a defendant’s authorized punishment contingent on the finding of a fact, that fact — no matter how the State labels it — must be found by a jury beyond a reasonable doubt.”[51] In Hurst, the United States Supreme Court reiterated its holding in Ap-prendi that any fact that “ ‘expose[s] the defendant to a greater punishment than that authorized by the jury’s guilty verdict’ is an ‘element’ [of a crime] that must be submitted to a jury.”[52] Because the determination of the existence of an aggravating circumstance is “purely factual,”[53] and such a finding exposes the defendant to a greater punishment than “the maximum he would receive if punished according to the facts reflected in .the jury verdict alone,” it must be found by a jury beyond a reasonable doubt.[54]
III. CERTIFIED QUESTION 3, WHICH ASKS WHETHER THE WEIGHING FUNCTION MUST BE PERFORMED BY A JURY, SHOULD BE ANSWERED IN THE NEGATIVE
As certified to this Court, Question 3 should be answered in the negative. I reach this conclusion for two reasons. First, Hurst overruled Spaziano and Hild-win only in part. Hurst leaves undisturbed the United States Supreme Court’s clear statement in Spaziano that “the Sixth Amendment does not require jury sentenc *496 ing” in capital cases.[55] Second, the most logical reading of Hurst is that it, like Ring, requires a jury to find an aggravating circumstance necessary for imposition of the death penalty, but it does not require the jury to perform the weighing function.[56]
Further, Hurst — which does not speak to the weighing function directly — should not be viewed as implicitly overruling the constitutionality of judicial sentencing in capital cases in the face of such clear authority to the contrary, and especially when the author of Hurst, Justice Sotoma-yor, has explicitly addressed the weighing function in a separate opinion dissenting from the denial of certiorari in Woodward v, Alabama.[57] The Hurst decision does not refer to Woodward, where Justice Sotoma-yor, in her dissent, observed that the Alabama capital sentencing scheme rendered a defendant death eligible upon a
factual finding that any aggravating factors outweigh the mitigating factors he has presented. The statutorily required finding that the aggravating factors of a defendant’s crime outweigh the mitigating factors is therefore necessary to impose the death penalty. It is clear, then, that this factual finding exposes the defendant to a greater punishment than he would otherwise receive: death, as opposed to life without parole. Under Ap-prendi and Ring, a finding that has such an effect must be made by a jury.[58]
Hurst does not hold that a jury determination of the appropriate sentence to be imposed is a necessary element of a constitutional capital sentencing framework. The distinguished author of Hurst could have said so — as she did in Woodward — if that is what the Supreme Court intended in Hurst.
Finally, given that our legislature has, in recent amendments to 11 Del. C. § 4209, stated that weighing is a judicial function under our statutory scheme, I cannot embrace a reading of Hurst — in the face of unambiguous United States Supreme Court precedent to the contrary — that would subvert our General Assembly’s clear intent to have judges be the ultimate sentencing authority. I explain each of these points more fully below.
A. The United States Supreme Court Has Expressly Approved of Judicial Sentencing, and Hurst Did Not Overrule Those Decisions 1. Prior to Hurst, Judicial Sentencing Was Explicitly Sanctioned
The United States Supreme Court has, on multiple occasions, expressly sanctioned judicial sentencing in capital cases. Prior to Hurst, the Supreme Court “made abundantly clear that a defendant does not enjoy a constitutional right to a jury determination as to the appropriate sentence to be imposed.”[59] The Spaziano Court stated *497 that “[t]he Sixth Amendment never has been thought to guarantee a right to a jury determination” of “the appropriate punishment to be imposed on an individual.”[60]
The death penalty is not “frustrated by, or inconsistent with, a scheme in which the imposition of the penalty in individual cases is determined by a judge.”[61] Concurring in Ring, Justice Scalia observed that “[tjhose States that leave the ultimate life- or-death decision to the judge may ... do so — by requiring a prior jury finding of aggravating factor in the sentencing phase or, more simply, by placing the aggravating-factor determination (where it logically belongs anyway) in the guilt phase.”[62] Hurst and Ring do not require a jury to make the determination that the aggravating circumstances outweigh the mitigating circumstances.[63]
2. Hurst Overrules Spaziano Only in “Relevant Part” and Does Not Address Proffitt
Hurst overruled Spaziano and Hildmn “in relevant part” and “to the extent they allow a sentencing judge to find an aggravating circumstance, independent of a jury’s factfinding, that is necessary for imposition of the death penalty.”[64] The Hurst Court did not hold that the Sixth Amendment requires that a jury must make the determination as to the appropriate sentence to be imposed in capital cases. Nor did Ring address whether “the Sixth Amendment require[s] the jury to make *498 the ultimate determination whether to impose the death penalty.”[65]
In Proffitt v. Florida,[66] a plurality of the United States Supreme Court did address whether the Sixth Amendment requires jury sentencing in capital cases. Proffitt states clearly that judicial sentencing is constitutionally permissible.[67] Proffitt “pointed out that jury sentencing in a capital case can perform an important societal function,” but it also emphasized that the Supreme Court “has never suggested that jury sentencing is constitutionally required.”[68] Following Proffitt, where the Court has considered sentencing authorities in capital cases, it has embraced judicial sentencing.[69] Hurst does not mention Proffitt.
Moreover, Justice Breyer’s concurrence in Hurst — which has not yet garnered majority support on the United States Supreme Court — would not have been necessary if the Court’s Opinion contemplated weighing by a jury as opposed to a judge. He wrote:
For the reasons explained in my opinion concurring in the judgment in Ring v. Arizona, I cannot join the Court’s opinion. As in that case, however, I concur in the judgment here based on my view that “the Eighth Amendment requires that a jury, not a judge, make the decision to sentence a defendant to death.”[70]
Justice Breyer concurred in the Hurst judgment precisely because the Majority did not hold that jury sentencing was constitutionally required, either by the Sixth or Eighth Amendment, in capital cases.
B. Principles of Federalism and Separation of Powers Call for Judicial Restraint and Favor a Narrower Holding That Judicial Sentencing Remains Permissible
Within our constitutional system of checks and balances, a State statute can be invalidated on the grounds that it violates the United States Constitution.[71] However, *499 I believe that a decision to render 11 Del. C. § 4209 unconstitutional here should only occur if Hurst unambiguously calls for such a result.[72] As to judicial sentencing, Hurst, in my view, is at least ambiguous. This fact should be counterbalanced against the undeniable reality that our State statute could not be more clear that judicial sentencing was intended.
To illustrate, in 1991, Delaware’s legislature amended 11 Del. C. § 4209 to effect a change from jury sentencing to judge sentencing. The synopsis of that amendment to the statute states:
This bill .would cause the judge to make the final determination as to whether a person convicted of first degree murder should be sentenced to death or life imprisonment. The bill provides a clear statutory framework to guide the judge and the jury would assist in this determination by rendering, after deliberations, as [sic] an advisory sentence to be imposed. This bill generally follows the Florida statute as approved by the United States Supreme Court.[73]
In 2002, following Ring, our statute was amended to largely reflect its present form.[74] 11 Del. C. § 4209 was amended *500 again in 2003 to reflect our General Assembly’s desire to have the ultimate sentencing authority reside with the judge as opposed to the jury.[75] The synopsis to the 2003 amendment states: “This Act re-affirms the intent of the General Assembly that the sentencing judge in a capital murder case shall be ultimately responsible for determining the penalty to'be imposed,”[76]
These legislative enactments' endorsing judicial sentencing are the result of our General Assembly’s reactions to criminal cases that deeply impacted Delaware’s citizenry. Particularly because Hurst does not expressly address judicial sentencing, and instead suggests that certain aspects of Spaziano and Hildwin survive, principles of federalism and separation of powers call for judicial restraint so as to not so easily unravel what our State legislature has deemed appropriate on more than one occasion. While the progression of United States Supreme Court jurisprudence discussed in my response to Certified Question 1 may evolve to eventually require jury sentencing, Hurst does not clearly mandate jury sentencing in capital cases.
IY. CERTIFIED QUESTION 4 IS INAPPLICABLE
Given my .answer to Question 3, Question 4 is inapplicable.
V. CERTIFIED QUESTION 5, AS TO WHETHER ANY UNCONSTITUTIONAL PROVISION CAN BE SEVERED, SHOULD BE ANSWERED IN THE NEGATIVE
In view the integral nature of the provisions of 11 Del. C. § 4209 that involve the findings of aggravating circumstances, the needed correction cannot be adequately addressed with jury instructions.[77] Instead, the revisions must be addressed by the General Assembly.
VI. CONCLUSION
What we address today is not whether capital punishment is categorically constitutional or not. In this regard, the United States Supreme Court has recently said that, as a matter of federal constitutional law, the death penalty is constitutional. Last year, for example, in Glossip v. Gross,[78] the Supreme Court stated that it has “time and again reaffirmed that capital punishment is not per se unconstitutional.” [79] Indeed, the Fifth Amendment to the United States Constitution expressly contemplates capital punishment.[80]
Nor is what the Delaware Constitution may require the subject of the certified *501 questions. Rather, we focus on whether the United States Supreme Court’s decision in Hurst invalidates any portion of our State death penalty statute as a matter of federal constitutional law.only. The constitutional issues addressed in Hurst — and, for that matter, Ring — concerned the judicial determination of aggravating circumstances. Based upon a plain reading of Hurst, I conclude that the only portions of our statute that are adversely impacted concern judicial findings of aggravating circumstances not found by thé jury.
From my perspective, Hurst does not reach our statute’s provision for judicial weighing of aggravating and mitigating circumstances. Judicial restraint calls for leaving the issue of judicial sentencing in capital cases to a day when the United States Supreme Court unambiguously addresses the matter. As the Supreme Court reiterated in Schád v. Arizona,[81] “[i]t goes without saying that preventing and dealing with crime is much more the business of the States than it is of the Federal Government.” [82] The Schad Court further observed that “we should not lightly construe the Constitution so as to intrude upon the administration of justice by the individual States.”[83] Based upon the Supreme Court’s recent remand of three cases involving Alabama’s death penalty statute[84] —a statute which bears some similarity to Delaware’s — the Court may eventually reconsider the issue of judicial sentencing. But until then, I am persuaded by Justice Scalia’s. observations in his separate concurrence in Glossip, where he stated:
Capital punishment presents moral questions that philosophers, theologians, and statesmen have grappled with for millennia. The Framers of our Constitution disagreed bitterly on the matter. For that reason, - they handled it the same way they handled many other con-troveisial issues: they left it to the People to decide.[85]
Accordingly, I would leave to the citizens of Delaware to decide certain issues regarding capital punishment not directly addressed by Hurst — and I would not declare unconstitutional other aspects of 11 Del. C. § 4209 without a clear directive from the United States Supreme Court.

. Id. at 619.

. Rauf v. State, No. 39, 2016 (Del. Jan. 28, 2016) (ORDER).

. Hurst, 136 S.Ct. at 619 (emphasis added).

. 536 U.S. 584, 122 S.Ct. 2428, 153 L,Ed.2d 556 (2002).

. Hurst, 136 S.Ct. at 621 (quoting Apprendi, 530 U.S. at 494, 120 S.Ct. 2348).

. Id.

. Id. at 622.

. Id. (quoting Fla. Stat. § 775.082(1)).

. — U.S. —-, 136 S.Ct. 633, 193 L.Ed.2d 535 (2016).

. Id. at 642.

. 468 U.S. 447, 104 S.Ct 3154, 82 L.Ed.2d 340 (1984), overruled by Hurst v. Florida, —— U.S. -, 136 S.Ct. 616, 193 L.Ed.2d 504 (2016).

. 490 U.S. 638, 109 S.Ct. 2055, 104 L.Ed.2d 728 (1989), overruled by Hurst v. Florida, — U.S. -, 136 S.Ct. 616, 193 L.Ed.2d 504 (2016).

. Hurst, 136 S.Ct. at 624.

. llDeZ. C. § 4209(c).

. 11 Del. C. § 4209(c)(3)(b.l) (emphasis added).

. Id. (emphasis added),

. See id.; Hurst, 136 S.Ct, at 622.

. 11 Del. C. § 4209(d)(1),

. Apprendi, 530 U.S. at 477, 120 S.Ct. 2348 (internal citations omitted).

. 406 U.S. 404, 92 S.Ct, 1628, 32 L.Ed.2d 184(1972).

. Johnson v. Louisiana, 406 U.S. 356, 369-80, 92 S.Ct. 1620, 32 L.Ed.2d 152 (1972) (Powell, J., concurring in the judgment in Apocada).

. See McDonald v. City of Chicago, 561 U.S. 742, 765-66, 766 n.14, 130 S.Ct. 3020, 177 L.Ed.2d 894 (2010).

. Apprendi, 530 U.S. at 498, 120 S.Ct. 2348 (Scalia, J., concurring) (emphasis in original).

. Claudio v. State, 585 A.2d 1278, 1290-1301 (Del. 1991) (discussing Delaware’s history of jury trials and the requirement of a unanimous jury verdict pursuant to the right to a trial by jury); see also Capano v. State, 889 A.2d 968, 973 (Del. 2006) (vacating the defendant’s death sentence because the defendant's "eligibility for the death penalty was decided by the sentencing judge without a unanimous jury finding,” and "[i]n Delaware, the elements of any criminal offense, including the greater offense of capital murder, must be found by a unanimous juiy.”).

. Hurst, 136 S.Ct. at 621 (quoting Alleyne v. United States, — U.S.-, 133 S.Ct. 2151, 186 L.Ed.2d 314 (2013)).

. Ring, 536 U.S. at 610, 122 S.Ct. 2428 (Scalia, J., concurring).

. Brice v. State, 815 A.2d 314, 322 (Del. 2003).

. Id.

. Hurst, 136 S.Ct. at 622.

. Id., (internal quotations marks and alterations omitted). Accord 11 Del. C. § 4209(d)(1).

. Del. H.B. 287 syn., 142nd Gen. Assem., 74 Del. Laws ch. 174 (2003).

. See Hurst, 136 S.Ct. at 622; 11 Del. C. § 4209.

. 815 A.2d 314 (Del. 2003).

. Id. at 322.

. Id.

. Id. at 319.

. Hurst, 136 S.Ct at 624.

. -U.S.-, 134 S.Ct. 405, 187 L.Ed.2d 449 (2013).

. Id. at 406.

. Id. at 410-11 (Sotomayor, J., dissenting).

. Hurst, 136 S.Ct. at 619 (emphasis added).

. Id. at 622.

. — U.S. -, 136 S.Ct. 616, 193 L.Ed.2d 504 (2016).

. 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002).

. Hurst, 136 S.Ct, at 622.

. Id. at 624.

. Id. at 619.

. Id. at 621-22. The Hurst Court summarized Ring as follows:
In Ring, we concluded that Arizona’s capital sentencing scheme violated Apprendi's rule because the State allowed a judge to find the facts necessary to sentence a defendant to death. An Arizona jury had convicted Timothy Ring of felony murder. Under state law, “Ring could not be sentenced to death, the statutory maximum penalty for first-degree murder, unless further findings were made.” Specifically, a judge could sentence Ring to death only after indepen *489 dently finding at least one aggravating circumstance. Ring’s judge followed this procedure, found an aggravating circumstance, and sentenced Ring to death.
The Court had little difficulty concluding that " ‘the required finding of an aggravated circumstance exposed Ring to a greater punishment than that authorized by the jury’s guilty verdict.’ ” Had Ring’s judge not engaged in any factfinding, Ring would have received a life sentence. Ring’s death sentence therefore violated his right to have a jury find the facts behind his punishment.
Id. at 621 (internal citations omitted).

. 468 U.S. 447, 104 S.Ct. 3154, 82 L.Ed.2d 340 (1984), overruled in part by Hurst v. Florida, — U.S.-, 136 S.Ct. 616, 193 L.Ed.2d 504 (2016).

. 490 U.S. 638, 109 S.Ct. 2055, 104 L.Ed.2d 728 (1989) (per curiam), overruled in part by Hurst v. Florida,-U.S.-, 136 S.Ct. 616, 193 L.Ed.2d 504 (2016).

. Hurst, 136 S.Ct. at 623 (emphasis added).

. Id. at 624 (emphasis added).

. See id. at 619. The United States Supreme Court has made clear that the determination as to whether aggravating circumstances exist is “purely factual.” Kansas v. Carr, — U.S. -, 136 S.Ct. 633, 642, 193 L.Ed.2d 535 (2016).

. Under 11 Del. C. § 4209, the sentencing judge cannot impose the sentence of death unless the jury "first finds unanimously and beyond a reasonable doubt the existence of at least 1 statutory aggravating circumstance. ...” 11 Del. C. § 4209(d)(1). However, if a jury finds unanimously and beyond a reasonable doubt the existence of at least one statutory aggravating circumstance, the court, "after considering the findings and recommendation of the jury and without hearing or reviewing any additional evidence, shall impose a sentence of death if the Court finds by a preponderance of the evidence” that the "aggravating circumstances found by the Court to exist outweigh the mitigating circumstances found by the Court to exist.” Id. (emphasis added). "Otherwise, the Court shall impose a sentence of imprisonment for the .remainder of the defendant's natural life without benefit of probation or parole or any other reduction.” 11 Del. C. § 4209(d)(2)..

. 75 A.3d 840 (Del. 2013).

. 869 A.2d 285 (Del. 2005), cert. denied, 546 U.S, 832, 126 S.Ct. 55, 163 L.Ed.2d 84 (2005).

. See Ploof, 75 A.3d at 846 n.12 (citing Ortiz, 869 A.2d 285) ("[A] jury’s lack of unanimity regarding [a] statutory aggravating factor ... does not preclude the sentencing judge from considering such evidence as a non[-]statutory aggravating factor as part of his weighing calculus,”). As recounted by the Ploof Court, Ortiz "affirmed the imposition of the death penalty. after a jury, having considered two statutory aggravating factors, unanimously found that -the defendant was previously convicted of a violent felony, but found only by a vote of -9-3 the circumstance of premeditation and substantial planning. Although it was not entitled to qualify as a statutory aggravating factor, the trial court found that sufficient evidence existed of premeditation and sub *490 stantial planning to warrant its use as a non[-]statutory aggravating factor.” Id. (internal citations omitted). The Superior Court also found seven additional non-statutoiy aggravating factors in Ortiz. Ortiz, 869 A.2d at 308-09.

. Apprendi v. New Jersey, 530 U.S. 466, 494 n.19, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000); see also Ring, 536 U.S. at 609, 122 S.Ct. 2428 (citing Apprendi, 530 U.S. at 494 n.19, 120 S.Ct. 2348) (“Because Arizona's enumerated aggravating factors operate as ‘the functional equivalent of an element of a greater offense,’ the Sixth Amendment requires that they be found by a jury.” (internal citation omitted)).

. Hurst, 136 S.Ct. at 621; see also Ring, 536 U.S. at 589, 122 S.Ct. 2428 ("Capital defendants, no less than noncapital defendants, we conclude, are entitled to a jury determination of any fact on which the legislature conditions an increase in their maximum punishment.”); id. at 610, 122 S.Ct. 2428 (Scalia, J., concurring) ("[T]he fundamental meaning of the jury-trial guarantee of the Sixth Amendment is that all facts essential to imposition of the level of punishment that the defendant receives — whether the statute calls them elements of the offense, sentencing factors, or Mary Jane — must be found by the jury beyond a reasonable doubt.”); Apprendi, 530 U.S. at 494, 120 S.Ct. 2348; id. at 499, 120 S.Ct. 2348 (Scalia, J., concurring) (“And the guarantee that ‘[i]n all criminal prosecutions, the accused shall enjoy the right to ... trial, by an impartial jury,' has no intelligible content unless it means that all the facts which must exist in order to subject the defendant to a legally prescribed punishment must be found by the jury.” (emphasis in original) (alterations in original)).

. Hurst, 136 S.Ct. at 624.

. See 11 Del. C. § 4209(d)(l)-(2).

. Hurst, 136 S.Ct. at 619; see also id. at 624 ("The Sixth Amendment protects a defendant’s right to an impartial jury. This right required Florida to base Timothy Hurst’s death sentence on a jury’s verdict, not a judge's factfinding. Florida’s sentencing scheme, which required the judge alone to find the existence of an aggravating circumstance, is therefore unconstitutional.”).

. 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000).

. Id. at 490, 120 S.Ct. 2348.

. 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004).

. Id. at 303, 124 S.Ct. 2531 (citing Ring, 536 U.S. at 602, 122 S.Ct. 2428 (" '[T]he maximum he would receive if punished according to the facts reflected in the jury verdict alone.’ ”)) (emphasis in original) (citations omitted).

. Id. at 304, 124 S.Ct. 2531 (internal citation omitted).

. Id.

. — U.S.-, 133 S.Ct. 2151, 186 L.Ed.2d 314 (2013).

. 536 U.S. 545, 122 S.Ct. 2406, 153 L.Ed.2d 524 (2002). In Harris, the defendant was charged with carrying a firearm in the course of committing a drug trafficking crime. Under 18 U.S.C. § 924, the mandatory minimum sentence based on the jury’s verdict alone was five years. The United States District Court for the Middle District of North Carolina nonetheless imposed a seven-year mandatory minimum sentence on the defendant, based on its finding that the defendant brandished the firearm. On appeal to the United States Supreme Court, the defendant unsuccessfully challenged the imposed mandatory minimum sentence as unconstitutional under Apprendi.

. Alleyne, 133 S.Ct. at 2157 (quoting Harris, 536 U.S. at 557, 560-61, 567, 122 S.Ct. 2406) (internal citations omitted) (internal quotation marks omitted).

. Id. at 2155 (quoting 18 U.S.C. § 924(c)(1)(A)) (internal quotation marks omitted).

. The Alleyne Court was careful to point out that their ruling “does not mean that any fact that influences judicial discretion must be found by a jury,” since the Supreme Court has “long recognized that broad sentencing discretion, informed by judicial factfinding, does not violate the Sixth Amendment,” Id. at 2163 (citing Dillon v. United States, 560 U.S. 817, 828-29, 130 S.Ct. 2683, 177 L.Ed.2d 271 (2010) ("[Wjithin established limits[,] ... the exercise of [sentencing] discretion does not contravene the Sixth Amendment even if it is informed by judge-found facts.” (alterations in Alleyne))-, Apprendi, 530 U.S. at 481, 120 S.Ct. 2348 (”[N]othing in this history suggests that it is impermissible for judges to exercise discretion — taking into consideration various factors relating both to offense and offender— in imposing a judgment within the range prescribed by statute,” (alteration in Alleyne) (emphasis in original)) (citations omitted)).

. Id. at 2161 (internal citations omitted).

. Id. at 2162; see also id. at 2162-63 ("The essential point is that the aggravating fact produced a higher range, which, in turn, conclusively indicates that the fact is an element of a distinct and aggravated crime. It must, therefore, be submitted to the jury and found beyond a reasonable doubt.”).

. Id. at 2162 (citations omitted); see also Blakely, 542 U.S. at 303-04, 124 S.Ct. 2531 ("[T]he relevant 'statutory maximum,' is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose without any additional findings.” (emphasis in original)).

. See Alleyne, 133 S.Ct. at 2165 (Sotomayor, J., concurring) (observing that Apprendi's "rule has become even more firmly rooted in the Court’s Sixth Amendment' jurisprudence in the decade since Harris").

. 815 A.2d 314 (Del. 2003).

. Id. at 322.

. Hurst, 136 S.Ct. at 624; see also id. at 619 ("The Sixth Amendment requires a jury, not a judge, to find each fact necessary to impose a sentence of death.” (emphasis added)); id. at 622 ("Ring required a jury to find every fact necessary to render [a defendant] eligible for the death penalty.” (emphasis added)).

. See supra note 12.

. Hurst, 136 S.Ct. at 623 (observing that "in, the Apprendi context, we have found that ‘stare decisis does not compel adherence to a decision whose "underpinnings” have been "eroded" by subsequent developments of constitutional law’ ” (internal citations omitted)) (internal quotation marks omitted); compare id. at 624 (holding that a judge cannot find an aggravating circumstance, independent of a jury, that is necessary to impose the death penalty), with Brice, 815 A.2d at 322 ("Non-statutory aggravators, if considered at all, do not enter the mix until after the jury performs its essential function during the narrowing phase. Accordingly, a finding of non-statutory factors does not ‘increase’ the maximum penalty that a defendant can receive. Rather, non-statutory aggravators are part of the total mix, including mitigating factors, when the sentencing judge performs his function during the weighing phase.”).

. See Claudio v. State, 585 A.2d 1278, 1301 (Del. 1991) (citing Fountain v. State, 275 A.2d 251 (Del. 1971)) (“This Court has expressly held that under the Delaware Constitution, unanimity of the jurors is required to reach a *494 verdict since such was the common law rule.” (footnote omitted)).

. 406 U.S. 404, 92 S.Ct. 1628, 32 L.Ed.2d 184 (1972).

. See Johnson v. Louisiana, 406 U.S. 366, 369-75, 92 S.Ct. 1635, 32 L.Ed.2d 162 (1972) (Powell, J., concurring in the Apodaca judgment and concurring in Johnson); see also McDonald v. City of Chicago, 561 U.S. 742, 766 n,14, 130 S.Ct. 3020, 177 L.Ed.2d 894 (2010) (citing Apodaca, 406 U.S. 404, 92 S.Ct. 1628, 32 L.Ed.2d 184; Johnson, 406 U.S. 356, 92 S.Ct. 1620, 32 L.Ed.2d 152 (holding that the Due Process Clause does not require unanimous jury verdicts in state criminal trials)); Jordan v. Massachusetts, 225 U.S. 167, 176, 32 S.Ct. 651, 56 L.Ed. 1038 (1912) ("In criminal cases due process of law is not denied by a state law ... which dispenses with the necessity of a jury of twelve, or unanimity in the verdict.”).

. Apodaca, 406 U.S. at 411, 92 S.Ct. 1628 (joint opinion of White, J., Burger, C.J., Blackmun and Rehnquist, JJ.).

. Id.

. 561 U.S. 742, 130 S.Ct. 3020, 177 L.Ed.2d 894 (2010).

. Id. at 766 n.14, 130 S.Ct. 3020 (internal citations omitted).

. Id.; see also Richardson v. United States, 526 U.S. 813, 821, 119 S.Ct. 1707, 143 L.Ed.2d 985 (1999) ("The cases are not federal but state, where this Court has not held that the Constitution imposes a jury-unanimity requirement.” (citation omitted)).

. See Brief for Petitioner at 45-47, Hurst v. Florida, - U.S. -, 136 S.Ct. 616, 193 L.Ed.2d 504 (2016) (No. 14-7505), 2015 WL 3523406.

. This Court has provided that "it is untenable to conclude that the right to trial by jury in the Delaware Constitution means exactly the same thing as that right in the United , States Constitution.” Claudio, 585 A.2d at 1298 (citation omitted). Delaware law has long recognized the significance of juror unanimity in criminal proceedings. See Wilson v. Oldfield, 1 DehCas. 622, 624-27 (Del. Com. Pl. 1818). This Court, in Fountain v. State, 275 A.2d 251 (Del. 1971), re-affirmed that it is "fundamental under our law that the verdict of a jury must be unanimous.” Id. at 251. There, we recognized that the requirement of juror unanimity under Delaware law follows from Article I, § 4 of the Delaware Constitution, which provides: "Trial by jury shall be as heretofore.” Del. Const. art. I, § 4. Fountain thus interpreted Article I, § 4 to "guarantee[] the right to trial by jury as it existed at common law.” Fountain, 275 A.2d at 251 (citing Nance v. Rees, 161 A.2d 795 (Del. 1960)). Accordingly, "[t]his Court and the other courts of Delaware have always construed that provision in the Delaware Constitution as 'guaranteeing the right to trial by jury as it existed at common law.' ” Claudio, 585 A.2d at 1297 (quoting Fountain, 275 A.2d at 251) (emphasis removed). "Unanimity of the jurors is therefore required to reach a verdict since such was the common law rule.” Fountain, 275 A.2d at 251 (citation omitted).

. Ring, 536 U.S. at 602, 122 S.Ct. 2428 (citing Apprendi, 530 U.S. at 482-83, 120 S.Ct. 2348).

. Hurst, 136 S.Ct. at 621 (quoting Apprendi, 530 U.S. at 494, 120 S.Ct. 2348) (alterations in Hurst and added).

. Carr, 136 S.Ct. at 642.

. See Ring, 536 U.S. at 602, 122 S.Ct. 2428 (quoting Apprendi, 530 U.S. at 483, 120 S.Ct. 2348) (internal quotation marks omitted).

. Compare Hurst, 136 S.Ct. at 624 ("Time and subsequent cases have washed away the logic of Spaziano and Hildwin. The decisions are overruled to the extent they allow a sentencing judge to find an aggravating circumstance, independent of a jury's factfinding, that is necessary for imposition of the death penalty.”), with Ring, 536 U.S. at 609, 122 S.Ct. 2428 ("[W]e overrule Walton to the extent that it allows a sentencing judge, sitting without a jury, to find an aggravating circumstance necessary for imposition of the death penalty.” (citation omitted)).

. — U.S.-, 134 S.Ct. 405, 410-11, 187 L.Ed.2d 449 (2013) (Sotomayor, J., dissenting from denial of certiorari).

. Id. (emphasis added) (internal citations omitted).

. Libretti v. United States, 516 U.S. 29, 49, 116 S.Ct. 356, 133 L.Ed.2d 271 (1995) (citing Spaziano, 468 U.S. at 459, 104 S.Ct. 3154 (no *497 right to a jury determination as to the imposition of the death penalty)) (citations omitted); see also Morgan v. Illinois, 504 U.S. 719, 725-26, 112 S.Ct. 2222, 119 L.Ed.2d 492 (1992) (‘‘•We have emphasized previously that there is not ‘any one right way for a State to set up its capital sentencing scheme,' and that no State is constitutionally required by the Sixth Amendment or otherwise to provide for jury determination of whether the death penally shall be imposed on a capital defendant.” (internal citations omitted)); id. at 740, 112 S.Ct. 2222 (Scalia, J., dissenting) (citing Clemons v. Mississippi, 494 U.S. 738, 745-46, 110 S.Ct. 1441, 108 L.Ed.2d 725 (1990); Spaziano, 468 U.S. at 464, 104 S.Ct. 3154 (citations omitted)) (“The Court today reaffirms our oft-repeated holding that the Sixth Amendment (which is binding on the States through the Fourteenth Amendment) does not require a jury trial.at the sentencing phase of a capital case.”). .

. Spaziano, 468 U.S. at 459, 104 S.Ct. 3154 (citations omitted).

. Id. at 462-63, 104 S.Ct. 3154 (footnote omitted).

. Ring, 536 U.S. at 612-13, 122 S.Ct. 2428 (Scalia, J., concurring).

. Various concurring and dissenting opinions have expressed support for jury sentencing in capital cases, but, to date, jury sentencing has not garnered majority support on the United States Supreme Court. See, e.g., Hurst, 136 S.Ct. at 624 (Breyer, J„ concurring in the judgment) (quoting Ring, 536 U.S. at 614, 122 S.Ct. 2428 (Breyer, J., concurring in the judgment)) ("[T]he Eighth Amendment requires that a jury, not a judge, make the decision to sentence a defendant to death.” (internal quotation marks omitted)); Woodward, 134 S.Ct. at 407 (Sotomayor, J., dissenting from denial of certiorari) ("One such safeguard, as determined by the vast majority of States, is that a jury, and not a judge, should impose any sentence of death.” (footnote omitted)); see also id. at 407 n.2 ("It is perhaps unsurprising that the national consensus has moved towards a capital sentencing scheme in which the jury is responsible for imposing capital punishment. Because capital punishment is an expression of society’s moral outrage at particularly offensive conduct, jurors, who express the conscience of the community on the ultimate question of life or death, seem best-positioned to decide whether the need for retribution in a particular case mandates imposition of the death penalty.” (internal citations omitted) (internal quotation marks omitted)).

.Hurst, 136 S.Ct. at 623-24.

. Ring, 536 U.S. at 597 n.4, 122 S.Ct. 2428 (citing Proffitt v. Florida, 428 U.S. 242, 252, 96 S.Ct. 2960, 49 L.Ed.2d 913 (1976) (plurality opinion) ("[I]t has never [been] suggested that jury sentencing is constitutionally required.” (alterations in Ring))).

. 428 U.S. 242, 96 S.Ct. 2960, 49 L.Ed.2d 913 (1976) (plurality opinion).

. See id. at 252, 96 S.Ct. 2960 (joint opinion of Powell, Stewart, Stevens, JJ.) ("And it would appear that judicial sentencing should lead, if anything, to even greater consistency in the imposition at the trial court level of capital punishment, since a trial judge is more experienced in sentencing than a jury, and therefore is better able to impose sentences similar to those imposed in analogous cases.” (citations omitted)).

. Id. (citing Witherspoon v. Illinois, 391 U.S. 510, 519 n.15, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968)) (emphasis added).

. See, e.g., Clemons, 494 U.S. at 745, 110 S.Ct. 1441 ("Any argument that the Constitution requires that a jury impose the sentence of death ... has been soundly rejected by prior decisions of this Court.”); id. ("[T]he decision whether a particular punishment— even the death penalty — is appropriate in any given case is not one that we have ever required to be made by a jury.” (citation omitted) (internal quotation marks omitted)).

. Hurst, 136 S.Ct. at 624 (Breyer, J., concurring in the judgment) (quoting Ring, 536 U.S. at 614, 122 S.Ct. 2428 (Breyer, J., concurring in the judgment)) (internal citations omitted).

. Indeed, the Supremacy Clause of Article VI of the United States Constitution makes clear that federal constitutional rights supersede any contrary State laws: "This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding.” U.S. Const, art. VI, cl. 2.

.A requirement of such clarity before mandating State officials to alter their statutory schemes exists, relatedly, in other contexts, such as addressing ambiguities in federal statutes. See Bond v. United States, —— U.S.-, 134 S.Ct. 2077, 2089, 189 L.Ed.2d 1 (2014) (referring to the established principle that “it is incumbent upon the federal courts to be certain of Congress’ intent before finding that federal law overrides the usual constitutional balance of federal and state powers,” and observing that "if the Federal Government would radically readjust[ ] the balance of state and national authority, those charged with the duty of legislating [must be] reasonably explicit” (internal citations omitted) (internal quotation marks omitted) (alterations in original)). Writing for the Court in Bond v. United States, Chief Justice Roberts commented that "[bjecause our constitutional structure leaves local criminal activity primarily to the States, we have generally declined to read federal law as intruding on that responsibility, unless Congress has clearly indicated that the law should have such reach.” Id. at 2083; cf Pennhurst State Sch. & Hosp. v. Halderman, 451 U.S. 1, 17, 101 S.Ct. 1531, 67 L.Ed.2d 694 (1981) ("By insisting that Congress speak with a clear voice, we enable the States to exercise their choice knowingly, cognizant of the consequences of their participation [in a grant of federal funds].”). Accordingly, although it is “the province and duty of the judicial department to say what the law is,” Marbury v. Madison, 5 U.S. (1 Cranch) 137, 177, 2 L.Ed. 60 (1803), I reject the more expansive interpretation of Hurst that three of my distinguished colleagues gave it.

. S.B. 79, 136th Gen. Assemb., 2d Sp. Sess., 68 Del. Laws ch. 189 (Del. 1991) (citing Proffitt, 428 U.S. at 260, 96 S.Ct. 2960 (White, J., concurring in the judgment) ("Under Florida law, the sentencing judge is [Required to impose the death penalty on all first-degree murderers as to whom the statutoiy aggravating factors outweigh the mitigating factors.”)) (citation omitted); see also H.B. 287, 142nd Gen. Assemb., 1st Reg. Sess., 74 Del. Laws ch. 174 (Del. 2003) ("In 1991, the 136th General Assembly changed Delaware’s death penalty statute so that the final sentencing authority in such cases was vested with the trial judge. [The synopsis to the 1991 amendment] clearly stated that the intent of the bill was to ensure that the judge would 'make the final determination as to whether a person convicted of first degree murder should be sentenced to death or life imprisonment.’ ”); id. ("[This Act] will clarify that it is and has been the intent of the General Assembly that while the sentencing judge must consider a jury's recommended finding on the question of whether the aggravating circumstances found to exist outweigh the mitigating circumstances found to exist, he or she shall not be bound by the recommendation, but instead shall give it such weight as he or she deems appropriate under the circumstances present in a given case.”).

. S.B. 449,, 141st Gen. Assemb., 2d Reg. Sess., 73 Del. Laws ch. 423 (Del. 2002) ("This Act will conform Delaware’s death penalty sentencing procedures to the new rule announced by the United States Supreme Court in Ring v. Arizona." (italics added)).

. H.B, 287, 142nd Gen. Assemb,, 1st Reg. Sess., 74 Del, Laws ch, 174 (Del, 2003).

. Id.

. Cf. 1 Del. C. § 308 ("If any provision of this Code or amendments hereto, or the application thereof to any person, thing or circumstances is held invalid, such invalidity shall not affect the provisions or application of this Code or such amendments that can be given effect without the invalid provisions or application, and to this end the provisions of this Code and such amendments are declared to be severable,”).

. — U.S.-, 135 S.Ct. 2726, 192 L.Ed.2d 761 (2015).

. Id. at 2739 (citing Baze v. Rees, 553 U.S, 35, 47, 128 S.Ct. 1520, 170 L.Ed.2d 420 (2008); id. at 87-88, 128 S.Ct. 1520 (Scalia, J., concurring in judgment); Gregg v. Georgia, 428 U.S. 153, 187, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976) (joint opinion of Stewart, Powell, .and Stevens, JJ.); id. at 226, 96 S.Ct. 2909 (White, J., concurring in judgment); Louisiana ex rel. Francis v. Resweber, 329 U.S. 459, 464, 67 S.Ct. 374, 91 L.Ed. 422 (1947); In re Kemmler, 136 U.S. 436, 447, 10 S.Ct. 930, 34 L.Ed. 519 (1890); Wilkerson v. Utah, 99 U.S. 130, 134-35, 25 L.Ed. 345 (1878)).

. U.S. Const, amend. V ("No person shall ... be deprived of life ... without due process of law_”); see also Glossip, 135 S.Ct. at 2747 (Scalia, J., concurring) ("Mind you, *501 not once in the history of the American Republic has this Court ever suggested the death penalty is categorically impermissible. The reason is obvious: It is impossible to hold unconstitutional that which the Constitution explicitly contemplates. The Fifth Amendment provides that ‘[n]o person shall be held to answer for a capital ... crime, unless on a presentment or indictment of a Grand Jury,' and that no person shall be ‘deprived of life ... without due process of law.’ ” (emphasis in original) (alterations in Glossip )).

. 501 U.S. 624, 111 S.Ct. 2491, 115 L.Ed.2d 555 (1991) (plurality opinion).

. Id. at 638, 111 S.Ct. 2491 (citation omitted) (internal quotation marks omitted).

. Id. (quoting Patterson v. New York, 432 U.S. 197, 201, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977)) (internal quotation marks omitted).

. Kirksey v. Alabama, — U.S. -, 136 S.Ct. 2409, 195 L.Ed.2d 777 (2016); Wimbley v. Alabama, — U.S.-, 136 S.Ct. 2387, — L.Ed.2d-(2016); Johnson v. Alabama, 195 U.S. 760, 136 S.Ct. 1837, 194 L.Ed.2d 828 (2016).

. Glossip, 135 S.Ct, at 2749-50 (Scalia, J., concurring).